**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **KAREN MCKENNA,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **CIVIL ACTION NO. 3:08CV1563(VLB)** |
| **VCS GROUP LLC,** | : | |
| **Defendant.** | : | **September 30, 2009** |

**MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION TO DISMISS [Doc. #8]**

**This matter comes before the Court upon Defendant's Motion to Dismiss [Doc. #8], filed pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). In this action, the Plaintiff, Karen McKenna ("McKenna"), alleges that the Defendant, VCS Group, LLC ("VCS"), subjected her to a hostile work environment on the basis of her sex, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000 et seq, and the Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. §46a-60(a)(8).[1] In pursuing the instant motion, VCS argues that McKenna failed to exhaust her administrative remedies as to several of her allegations, and further, that the Plaintiff fails to state a claim upon which relief can be granted.[2] At issue is: (1) whether the Plaintiff's present**

**[1] McKenna filed an administrative complaint with the Connecticut Commission on Human Rights and Opportunities (CHRO) in October 2006. The CHRO issued a "Release of Jurisdiction" relative to her claims under the CFEPA and the Equal Employment Opportunity Commission (EEOC) issued a "Right to Sue" letter with respect to McKenna's claims under Title VII. [Doc. #1 Ex. A and B].**

**[2] In response to Defendants' Motion to Dismiss, Plaintiff moved to withdraw several claims including all claims against Louise Camuto as well as her claim against VCS Group, LLC for intentional infliction of emotional distress [Doc. #**

**action is precluded because it introduces claims that she failed to raise while seeking an administrative remedy; and (2) whether the Plaintiff alleges sufficient factual matter to state a plausible claim for relief.**

**For the reasons stated hereinafter, the motion is GRANTED.**

**FACTS**

**For the purposes of this motion, the following facts as alleged in the Complaint [Doc. #1] are accepted as true. The Plaintiff, McKenna, was employed by the Defendant, VCS, as the Director of Retail Development, starting in November of 2005. McKenna's role at VCS included the coordination of trade shows and marketing activities for the company's high-end women's fashion products. McKenna reported to Louise Camuto, VCS's Vice President of Marketing and Communications, during the course of her employment.**

**The Plaintiff's CHRO complaint notes that during the course of her seven month employment at VCS, Camuto's behavior towards her "went from aggressive and condescending, to abusive and destructive, and finally humiliating." The CHRO complaint identifies "[e]xamples of Mrs. Camuto's conduct" by referring to the following incidents:**

> **[A]lternatively telling me I was doing an excellent job and that I better "move faster" or I would be fired; instructing me to clean out the garage at her residence, instructing me to go on shopping trips for furniture for her house; remarking at a staff meeting that I had "large breasts" and "must be looking**

**12]. The court granted this motion on December 18, 2008 and Louise Camuto was removed as a defendant from this case [Doc. # 17]. As a result, the Defendant's motion to dismiss pursuant to FRCP 12(b)(1) is moot.**

> for a husband;" that I was "showing quite a lot of cleavage" that another employee had taken personal time and thus "must have had an abortion."

The Plaintiff's federal Complaint includes additional details about Camuto's conduct by noting that the comments about McKenna's breast size, cleavage, and statements that she "must be looking for a husband" occurred on at least fifteen occasions during staff meetings over several months. In addition, the Complaint states that Camuto remarked that "McKenna was 'living with her mommy' and must be desperate for a man or husband."

McKenna complained to Christine Hayles, the Vice President of Human Resources at VCS, regarding Camuto's behavior on several occasions. Hayles remarked that Camuto's conduct was illegal and inappropriate, but no corrective action was taken. On September 26, 2008 the CHRO issued a "Release of Jurisdiction" regarding McKenna's CFEPA claims. Similarly, the EEOC issued a "Right to Sue" Letter on October 1, 2008, for the Plaintiff's claims under Title VII. The Plaintiff filed this suit on October 10, 2008.

STANDARD OF REVIEW

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

> [The Court] accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party. In general, [the Court's] review is limited to the facts as asserted within the four corners of

the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.

McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007) (internal citation omitted). The Court must determine whether the complaint states enough facts, as opposed to legal conclusions, to "nudge[] [the] claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Furthermore, Rule 8's pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal citation omitted). In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp., 550 U.S. at 570).

## DISCUSSION

As a threshold matter, the Defendant asserts that: "the court should refuse to consider the new allegations McKenna has added to her federal Complaint, previously omitted from her CHRO complaint, because she has failed to exhaust her administrative remedies with regard to those additional allegations." [Doc. #9]. Specifically, the Defendant argues that "they are based upon an entirely new claim concerning 'fifteen (15) occasions' of alleged conduct that allegedly preceded the [administrative] charge, but which was inexplicably omitted from

that charge." [Doc. #16].

The Plaintiff responds that: "there is no basis upon which to restrict a Plaintiff to a literal reading of the complaint filed at the administrative level." [Doc. #13]. Further, the Plaintiff argues that "[t]his is all the more true because in this case the CHRO retained the case for full investigation, but failed to hold a hearing within the time necessary for Plaintiff to adjudicate her rights in Federal Court." [Doc. #13]

Prior to bringing suit under Title VII, a plaintiff must exhaust the administrative remedies available to her so as to put the employer and the administrative agency on notice as to the extent of the complaint. 42 U.S.C. § 2000e-5(f). The Second Circuit has noted that "the purpose of the notice provision, which is to encourage settlement of discrimination disputes through conciliation and voluntary compliance, would be defeated if a complainant could litigate a claim not previously presented to and investigated by the [agency]." Butts v. City of N.Y. Dep't of Hous., 990 F.2d 1397, 1401 (2d Cir. 1993), superseded by statute on other grounds as recognized in Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684 (2d Cir. 1998). In Fitzgerald v. Henderson, 251 F.3d 345, 359-60 (2d Cir. 2001), the Second Circuit held that:

> If a claimant fails to pursue a given claim in administrative proceedings, the federal court generally lacks jurisdiction to adjudicate that claim. Even as to a claim not expressly pursued before the administrative agency, however, the court has jurisdiction if that claim is "reasonably related" to those that the plaintiff did assert before the agency. A claim is considered reasonably related if the conduct complained of would

> **fall within in the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.**

**(internal quotations and citations omitted).**

**This "reasonably related" doctrine applies when the "factual allegations made in the administrative complaint can be fairly read to encompass the claims ultimately pleaded in the civil action or to have placed the employer on notice that such claims might be raised." Mathirampuzha v. Potter, 548 F.3d 70, 77 (2d Cir. 2008). In general, this "exception to the exhaustion requirement is essentially an allowance of loose pleading and is based on the recognition that [administrative] charges frequently are filled out by employees without the benefit of counsel." Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003) (internal quotations omitted).**

**In Mathirampuzha, the case most heavily relied upon by VCS, the plaintiff's administrative complaint alleged a single incident of discrimination: that the supervisor physically assaulted and yelled at the plaintiff while in very close proximity to the plaintiff's face. 548 F.3d at 75-76. In his federal complaint however, Mathirampuzha tried to raise a hostile work environment claim by adding allegations that he had been verbally harassed and received disparate treatment prior to the incident already alleged. Id. The Second Circuit found it implausible that the "plaintiff's allegation of a single incident of aggression by Sacco could reasonably be expected to blossom into an investigation . . . [of] several years" and further that the administrative "filing did not give the Postal Service adequate notice nor did it contain the factual underpinnings of a hostile**

**work environment . . . claim." Id. at 76-77 (internal quotations and citations omitted).**

**Here, however, McKenna's administrative complaint to the CHRO does allege several instances of inappropriate conduct by Camuto and characterizes the noted incidents as "[e]xamples of Mrs. Camuto's behavior." While the administrative complaint does not specifically allege that comments by Camuto regarding McKenna's breast size and marital status were made on "not less than fifteen (15) occasions" at "various management meetings," it is well settled that "precise pleading is not required for Title VII exhaustion purposes." Deravin, 335 F.3d at 202. McKenna's CHRO complaint does state that "these remarks were pervasive" and further that complaints were made by her to the head of Human Resources "on several occasions." These statements were adequate to put VCS and the CHRO on notice that McKenna had been subjected to repeated comments on more than one occasion and not merely "at a staff meeting." In addition, the facts alleged in McKenna's Complaint were of the same nature as those alleged in the administrative complaint. It is reasonable to anticipate that this conduct would have fallen within the scope of a CHRO investigation.[3] The facts alleged in**

**[3] Plaintiff's contention that the CHRO's failure to investigate her claim has any bearing on this discussion is misplaced. A plaintiff may be issued a right-to-sue letter 180 days after filing a charge with the administrative agency. 42 U.S.C. §2000e-5(f)(1); Woods v. Dunlop Tire Corp. 972 F.2d 36, 39 (2d Cir. 1992). ("If a complainant is dissatisfied with the progress the EEOC is making on his or her charge of employment discrimination, he or she may elect to circumvent the EEOC procedures and seek relief through a private enforcement action in a district court" after 180 days). Such action has no bearing on the relevant test, which is whether "the conduct complained of *would* fall within the scope of . . . the charge of discrimination." Terry v. Ashcroft, 336 F.3d 128, 151 (2d Cir. 2003)**

**the Complaint were reasonably related to the facts alleged in McKenna's administrative complaint, and the Court may consider them in deciding the instant motion to dismiss.**

**The Defendant next argues that the Court should dismiss the Title VII and CFEPA claims against VCS "because the allegations in the complaint do not support a claim for hostile work environment sexual harassment." Specifically, the Defendant contends that "McKenna has not alleged that she was subjected to the kind of severe and pervasive conduct that would create in a reasonable person a work environment so hostile or abusive that it constituted sexual harassment."**

**The Plaintiff responds that: "the Plaintiff in this case was entitled both objectively and subjectively to consider the workplace environment created as 'hostile' and changed for the worse." Specifically, the Plaintiff asserts that "the conduct described is not merely an aggressive management style by Ms. Camuto, it is conduct that targeted the Plaintiff for gender-based humiliation and punishment."**

**Title VII is not a "general civility code for the American workplace." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998). "In same-sex (as in all) harassment cases, that inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target." Id. at 81. "Common sense, and an appropriate sensitivity to social context, will**

**(emphasis added).**

**enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." Id. at 82.**

**In Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007), the Second Circuit held that:**

> **To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive-that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of a plaintiff's sex.**

**508 F.3d 106, 113 (2d Cir. 2007) (internal quotations and citations omitted). The Second Circuit further noted that the factors a court may consider in determining whether a work environment is *objectively* hostile include: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." Id. (internal quotation omitted). "The incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Carrero v. N.Y. City Hous. Auth. 890 F.2d 569, 577 (2d Cir.1989).**

**While the Second Circuit notes that hostile work environment claims must meet a high standard, the Court also cautions against "setting the bar too high," and has noted that "the test is whether the harassment is of such a quality or quantity that a reasonable employee would find the conditions of her employment**

***altered for the worse.*" Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003) (internal quotations omitted).**

**In Mormol v. Costco Wholesale Corp., 364 F.3d 54, 59 (2d Cir. 2004), the Second Circuit found that six incidents occurring within a one-month period were "far from being pervasive." In Mormol, the Plaintiff alleged that her supervisor propositioned her for sex by stating that he would not approve her vacation request if she refused to have sex with him and offered to give her money, take her on vacations, and provide employment perks if she agreed to have sex with him. Id. at 55. The court further concluded that the "harassment alleged" was "not sufficiently severe to overcome its lack of pervasiveness." Id. at 59.[4]**

**In Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d. Cir 1998), the Second Circuit similarly found that a plaintiff's allegations against her supervisor did not rise to the level of a hostile work environment where her supervisor (1) "told Quinn that she had been voted the 'sleekest ass' in the office, and (2) that, on another occasion, he 'deliberately touched [Quinn's] breasts with some**

**[4] During oral arguments on June 23, 2009, Plaintiff's counsel highlighted VCS's failure to act on McKenna's complaints to Human Resources as a factor that distinguished the present case from the facts in Mormol. To the contrary, the court in Mormol did not reach this analysis because it found that the behavior of the plaintiff's supervisor was neither severe nor pervasive enough to state a claim for hostile work environment: "Because we conclude that the terms and conditions of plaintiff's employment were not altered by the alleged acts of harassment involving Ziermann, we need not consider, under principles of agency law, whether Ziermann's actions can be imputed to Costco. We therefore need not examine whether Costco exercised reasonable care to prevent and correct promptly any sexually harassing behavior." 364 F.3d at 59 (internal quotation omitted). Accordingly, any failure by VCS to stop Camuto's behavior is more relevant to an assessment of VCS's liability for Camuto's actions.**

papers he was holding in his hand.'" The Second Circuit concluded that although her supervisor's conduct was "obviously offensive and inappropriate," the incidents were "sufficiently isolated and discrete that a trier of fact could not reasonably conclude that they pervaded Quinn's work environment." Id.

Here, McKenna alleges that on "not less than fifteen (15) occasions" over the course of her seven months of employment at VCS, Camuto "remarked upon McKenna's dress as 'showing quite a bit of cleavage.'" Camuto "invited others at meetings to note that McKenna had 'large breasts'" and that "McKenna was 'living with her mommy' and must be desperate for a man." Camuto also ordered McKenna to complete such tasks as "clean[ing] out Camuto's garage at Camuto's home."

Even construing these allegations in the light most favorable to McKenna, the Court concludes that she fails to allege a claim for hostile work environment. Applying the test identified in Patane within the context of the standard that has been articulated by Iqbal and Twombly, the Complaint, even when accepting all the allegations as true, fails to provide sufficient facts to allege a scenario where a reasonable employee would find that Camuto's behavior was sufficiently severe or so pervasive to alter the Plaintiff's working conditions for the worse . In total, the Complaint notes, with very limited detail, that Camuto made inappropriate comments relating to the Plaintiff's marital status, breast size, and cleavage on approximately fifteen occasions over several months of employment and concludes that "Camuto made humiliating sexual comments and demands

**motivated by McKenna's gender" and that this "pervasive conduct . . . created an abusive employment environment for McKenna, thereby altering the conditions of her employment."**

**McKenna fails to provide sufficient factual matter about how the alleged incidents created an abusive environment altering the course of her employment. McKenna "pleads facts that are merely consistent with a defendant's liability" and thus "stops short of the line between possibility and plausibility of entitlement to relief. . ." Iqbal, 129 S. Ct. at 1949 (internal quotations omitted).**

**The Court further notes that, as alleged in the Complaint, the approximately fifteen comments made by Camuto to McKenna over a seven month period are at most episodic and do not reach the level of pervasiveness required to allege a Title VII violation. As noted, Mormol's six comments that were made in just one month were "far from pervasive." In this matter, as alleged Camuto's comments occurred at an average rate of two to three comments per month. In addition, none of the comments made by Camuto to McKenna meet the level of severity at issue in Mormol and Quinn and as such cannot be considered sufficiently severe to overcome this noted lack of pervasiveness. The Defendant's alleged distasteful behavior pales greatly in comparison to Mormol, where a supervisor manipulated his position of power to make demands for a sexual relationship 364 F.3d at 59. The strength of McKenna's allegations are also negated by Quinn, where the supervisor used language that was considerably more sexually charged and actually made inappropriate contact with the Plaintiff's breasts 159**

F.3d at 768. Lastly, Hayles observation that Camuto's conduct was "illegal and inappropriate" might have averted dismissal had the complaint reflected a basis for her assertion or showed that she believed that Camuto's behavior occurred with a frequency and excessiveness that approached the Second Circuit's severity and pervasiveness requirements. As alleged, McKenna only identifies offensive behavior by the Defendant.

As the Second Circuit has noted, "Title VII does not authorize a hostile work environment claim for conduct that was merely offensive." Fitzgerald 251 F.3d at 356-57. The Plaintiff's complaint fails to allege sufficient factual matter to rise to the level of a Title VII claim. Although inappropriate, and clearly offensive to McKenna, it is not plausible that Camuto's behavior, as alleged, created an environment that a reasonable person would find hostile or abusive. As such, McKenna fails to adequately state a claim of hostile work environment for which relief can be granted.

As a final matter, claims, including hostile work environment claims, "under CFEPA are analyzed in the same manner as those under Title VII." Kearney v. City of Bridgeport Police Dept., 573 F. Supp.2d 562, 573 (D. Conn. 2008) (citing Brittel v. Dep't of Corr., 247 Conn. 148, 164, 717 A.2d 1254 (1998)). As a result, the Plaintiff's claim under Conn. Gen. Stat. §46a-60(a)(8) will also be dismissed.

CONCLUSION

The Court GRANTS the Defendant's motion to dismiss for failure to state a

**claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Clerk is directed to CLOSE this case.**

**IT IS SO ORDERED**

**/s/**

**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: September 30, 2009**